JOYCE M. ALLEN, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Allen v. Commissioner
Docket No. 16922-79.
United States Tax Court
T.C. Memo 1982-188; 1982 Tax Ct. Memo LEXIS 551; 43 T.C.M. (CCH) 1045; T.C.M. (RIA) 82188; April 13, 1982. Trudy Polsky, for the petitioner. Alan J. Pinner, for the respondent. DRENNEN
MEMORANDUM FINDINGS OF FACT AND OPINION DRENNEN, Judge: This case was assigned to and heard by Special Trial Judge Fred S. Gilbert, Jr., pursuant to the provisions of section 7456(c) of the Internal Revenue Code[1] and Rules 180 and 181, Tax Court Rules of Practice and Procedure.[2] The Court agrees with and adopts his opinion which is set forth below. *552 OPINION OF THE SPECIAL TRIAL JUDGE GILBERT, Special Trial Judge: Respondent determined a deficiency in petitioner's Federal income tax for 1976 in the amount of $ 1,834.44. The only question for decision is whether the transaction described below qualifies for nonrecognition of gain, under section 1031. In November, 1969, petitioner, [3] Oby E. Woods, Jr., and Carol A. Woods (hereinafter referred to as the Woods) acquired as tenants in common a parcel of residential real property located in Cerritos, California (hereinafter referred to as the Cerritos property), which they held as rental property. In early 1976, petitioner located an apartment complex in Stanton, California (hereinafter referred to as the Stanton property), which she desired to obtain through a trade for the Cerritos property. The Stanton property was owned by Earl E. Clayton and Katherine A. Clayton (hereinafter referred to as the Claytons). The Claytons, when approached by petitioner, at first agreed to take the Cerritos property in trade, but later stated that they were instead interested in receiving cash for their property. *553 Sometime before April, 1976, petitioner learned of the interest of Mr. and Mrs. Robert W. West (hereinafter referred to as the Wests) in purchasing the Cerritos property. Petitioner and the Woods agreed to the sale, and petitioner attempted to structure the sale of the Cerritos property and purchase of the Stanton property as a like-kind exchange, under section 1031. Two escrows were used. On April 12, 1976, petitioner and the Claytons opened an account with Summit Escrow for the purchase of the Stanton property. On May 3, 1976, petitioner, the Woods, and the Wests opened an account with Fullerton Mortgage and Escrow Company for the sale of the Cerritos property. The money paid by the Wests for the Cerritos property was deposited in the Fullerton escrow. The portion that was allocable to petitioner's interest in the property was then transferred by the escrow agent to the Summit escrow, where it was applied to the purchase price of the Stanton property to be paid by petitioner. After all payments were made, the two escrows were closed concurrently on June 17, 1976. At the close of the escrows, petitioner received title to the Stanton property, the Wests received title to *554 the Cerritos property, and the Claytons and Woods received any cash proceeds. Petitioner received no cash. Each of the escrows was subject to several conditions, such as the qualification of the buyer and the property for loans. However, neither of the escrows was made subject to the successful completion of the transaction concerned in the other escrow. Section 1031(a) provides: (a) Nonrecognition of Gain or Loss From Exchanges Solely in Kind.--No gain or loss shall be recognized if property held for productive use in trade or business or for investment * * * is exchanged solely for property of a like kind to be held either for productive use in trade or business or for investment. In order for gain or loss to go unrecognized, the statute requires an exchange of properties. A transaction consisting of the sale of one property and the reinvestment of the proceeds in another property does not qualify for nonrecognition. Carlton v. Commissioner,385 F.2d 238, 241 (5th Cir. 1967). *555 In several cases, transactions involving three or more parties have been successfully structured as exchanges qualifying under section 1031, even though the same economic results might have been achieved more directly through sales and reinvestments of the proceeds. Biggs v. Commissioner,69 T.C. 905 (1978), affd. 632 F.2d 1171 (5th Cir. 1980); Barker v. Commissioner,74 T.C. 555 (1980); Brauer v. Commissioner,74 T.C. 1134 (1980). In each of those cases, the Court considered multiple conveyances of property and found that, in substance, an exchange had occurred. In Biggs, for example, the Tax Court found that the various transfers of property involved were "part of an integrated plan intended to effectuate an exchange of like kind properties, the substantive result of which was an exchange within the meaning of section 1031" (pp. 914-915). Petitioner, in effect, asks the Court to view the present transactions similarly and find that the sale of the Cerritos property and the acquisition of the Stanton property were steps in an integrated transaction, the substance of which was an exchange of proprties. *556 However, we do not find that this was the case. As noted above, the sale of the Cerritos property and the acquisition of the Stanton property were each subject to several conditions. Nothing in the record indicates, however, that the successful completion of either transaction was a condition of the other. On the contrary, it appears that the failure of either transaction would have left the rights and obligations of the parties to the other transaction unaffected. It may well be that petitioner would not have had the necessary funds with which to acquire the Stanton property if the sale of the Cerritos property had failed, but the record does not establish even this much. Even if it did, we do not believe that this would be sufficient to bring the two transactions within the scope of section 1031. It is, no doubt, the case in many straightforward sales of property, followed by purchases of similar property, that the purchase is dependent upon the proceeds of the sale, but this is clearly not enough for a sale and subsequent purchase to constitute an exchange under section 1031. The two transactions in this case were related only in the sense that the proceeds of the sale *557 of the Cerritos property were, in fact, used for the purchase of the Stanton property and may have been necessary for it. We do not think that this is sufficient for the transactions to be viewed as interdependent steps pursuant to an exchange of one property for the other. Instead, we think that the transactions are better characterized as a sale and reinvestment of the proceeds. Accordingly, we hold that the transactions do not qualify for nonrecognition of gain, under section 1031. See Meadows v. Commissioner,T.C. Memo. 1981-417, in which the same result was reached on similar facts. Decision will be entered for the respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated. ↩
2. Pursuant to the order of assignment, on the authority of the "otherwise provided" language of Rule 182, Tax Court Rules of Practice and Procedure↩, the post-trial procedures set forth in that rule are not applicable to this case.
3. The interest here attributed to "petitioner" was actually held jointly by the petitioner Joyce M. Allen and her late husband William T. Allen, as were all other interests referred to herein as having been held by "petitioner." We refer only to "petitioner" for simplicity's sake, since Mrs. Allen is the sole petitioner in this case.↩